# ISRAEL DIEBEL v. WOLPERT, DAVIS & COMPANY.[1]

March 12, 1915.

Nos. 19,074—(271).

**Injury to servant — evidence.**
    Evidence *held* sufficient to justify the jury in finding that one of the au-

1 Reported in 151 N. W. 541.

tomatic gates used in connection with an elevator shaft in defendant's place of business, was and had been for some time out of order, and that, by reason of its failure automatically to close with the movements of the elevator, plaintiff's intestate, an employee of defendant, fell into the shaft and received injuries resulting in his death.

Action in the district court for Hennepin county by the administrator of the estate of Henry Diebel, deceased, to recover $7,500 for the death of his intestate. The case was tried before Dickinson, J., who when plaintiff rested granted defendant Doerr's motion for a directed verdict and denied defendant corporation's motion to dismiss the action, and a jury which returned a verdict for $2,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant corporation appealed. Affirmed.

A. A. Tenner, for appellant.

M. C. Tifft and C. M. Tifft, for respondent.

BROWN, C. J.

Defendant conducts a wholesale grocery establishment in Minneapolis. The building occupied by the company is four stories in height, and access to the various floors is had, in addition to certain stairways, by an elevator operated by employees who have occasion to use it. The elevator is supplied with what are termed in the record as semi-automatic gates, which are designed and intended to close the doorway leading into the elevator shaft when the elevator is under movement from floor to floor. As the elevator ascends the gates automatically lower into position. They do not rise with the movement of the elevator, and when necessary are raised by hand, and until so raised they are supposed to remain in position, thus preventing entrance into the elevator shaft.

Decedent was in the employ of defendant doing general repair work, with his place of work on the third floor of the building. On the evening of the second day of his service, at about 6 o'clock and the usual quitting time, he was found by one of the other employees at the bottom of the elevator shaft and so badly injured that he died soon after. He had fallen down the elevator shaft. No one saw the accident, or was able to testify directly how or where dece-

dent got into the shaft, but the evidence makes it clear that he entered it at some point by accident or inadvertence and met his death in the manner stated.

This action was brought by the administrator of the estate of decedent to recover for his death upon the alleged ground that such death was caused by the negligence of defendant. Plaintiff had a verdict and defendant appealed from an order denying its motion for judgment or a new trial.

The questions presented are: (1) Whether the evidence supports the verdict affirming negligence on the part of defendant; and (2) whether it sufficiently connects the death of decedent with the negligence relied upon for recovery. It is contended by defendant that both questions must be answered in the negative. In this we do not concur.

1. Though negligence in several respects was charged in the complaint, the cause was submitted to the jury solely upon the question whether the defendant was negligent in maintaining the elevator gate on the third floor of the building in a defective condition. All other allegations of negligence were eliminated from the case. It was the claim of plaintiff on the trial that the gate on this floor of the building was out of order, that it had been out of repair for some time, and would not operate as designed, in that it would not at all times automatically lower into position with the movement of the elevator, in consequence of which it remained out of position, leaving the entrance to the elevator shaft without a barrier.

There can be no question that if the evidence sustains this claim a case of negligence was made out, entitling plaintiff to recover, if the cause of death of decedent. G. S. 1913, § 3873; 2 Dunnell, Minn. Dig. § 5896; Healy v. Hoy, 112 Minn. 138, 141, 127 N. W. 482. It is not contended to the contrary. But defendant does claim that the evidence wholly fails to establish the alleged defect in the gate. Our examination of the record leads to the conclusion that the evidence made this question one of fact for the jury. The evidence is somewhat conflicting, but we find therein sufficient to justify the jury in finding that the gate was out of order and would not at all times operate properly, that it had been in such condition

for some time prior to the time in question, and that defendant had notice of the same. It would serve no useful purpose to discuss the evidence, it is sufficient that we have fully examined it with the result stated.

2. Was the gate out of position at the time in question, and did decedent fall into the shaft by reason of that fact? We think this question must also be answered in favor of the finding of the jury. The decedent had been in the employ of defendant for two days, and evidently was not thoroughly familiar with the premises; either with the location of the stairway or the elevator shaft. He had quit work for the day and was making his way out of the building, which he could do either by way of the stairway or the elevator. Some of the evidence offered by plaintiff, though disputed by defendant, tends to show that the room in which decedent was at work was not well lighted, that electric lights near the elevator shaft were dim and inadequate as a guide to one not familiar with the premises, and the stairway was not readily located. The room was somewhat filled with boxes, the windows were smoky and unclean, and whether decedent was aware of the precise location of the stairway is not made clear by the evidence. And though, as stated, the evidence is not conclusive upon the subject, we think it clear enough to justify the jury in finding that decedent in his efforts to get down to the ground floor wandered into the elevator shaft, either supposing that it was the stairway, or that the elevator was in position for use, and thus met his death. The evidence places the matter entirely beyond the realm of speculation. It seems to us to be beyond fair controversy that decedent so met his death, for there is no other reasonable explanation. In view of the evidence tending to show that the gate in question was out of order and did not operate properly, the jury was justified in finding that by reason of that condition it was left open by some movement of the elevator, leaving exposed the open shaft into which decedent walked. This is not speculative nor conjectural, but a reasonable conclusion from the facts disclosed. There is no suggestion of suicide, nor dispute about the fact that decedent fell down the elevator shaft and thus met his death. Mitton v. Cargill Elevator Co. 124 Minn. 65, 144 N. W. 434; La Pray

v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Fitzgerald v. Armour & Co. infra, page 81, 151 N. W. 539. The testimony of one witness produced by defendant was to the effect that immediately after the accident he proceeded to the third floor and found the gate in proper position. This evidence was proper for the consideration of the jury, but was not conclusive. The facts and circumstances shown, taken as a whole, tended to render the story of the witness improbable.

This covers all that need be said. We find evidence sufficient to support the verdict and no ground upon which to order a reversal.

Order affirmed.